**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ROBERT L. SWINTON, | Civil Action No. |
| Petitioner, | No. 3:22 - CV - 290 (CSH) |
| v. | |
| TIMETHEA PULLEN, Warden of Federal Correctional Institution at Danbury, in her official capacity, | MARCH 23, 2023 |
| Respondent. | |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS [Doc. 1], RESPONDENT'S MOTION TO DISMISS PETITION [Doc. 10], AND PETITIONER'S MOTIONS FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER [Doc. 11 &13]**

**HAIGHT, Senior District Judge:**

## I.   BACKGROUND

*Pro se* petitioner Robert L. Swinton, Jr. filed a "Petition for Writ of Habeas Corpus" [Doc. 1] pursuant to 28 U.S.C. § 2241, alleging various problematic conditions while formerly incarcerated at the Federal Correctional Institution, Danbury ("FCI Danbury"), related to the COVID-19 pandemic and the failure of the Federal Bureau of Prisons ("BOP") administrative grievance process to grant him "release relief."[1]  Doc. 1,  5-6.  Specifically, Swinton asserted

---

[1] Swinton was convicted in the United States District Court for the Western District of New York (Elizabeth A. Wolford, *J.*) of possessing cocaine with intent to distribute; using premises to manufacture, distribute and use controlled substances; possessing firearms in furtherance of drug trafficking crimes; and being a felon in possession of firearms and ammunition. *United States v. Swinton*, No. 6:15-CR-06055 (EAW) (MWP), 2017 WL 9479128, at *1

that "CDC [Centers for Disease Control] identified issues . . . ma[d]e him susceptible to COVID-19," the BOP "failed to [i]mplement CARES ACT/Compassionate Release protocols" to protect him, and he was   "knowingly hous[ed] . . . in an unsafe environment."[2]  Doc. 1, ¶ 13(a).

As relief, Swinton requested that the Court "release [him] to home confinement" and that "the remainder of [his] sentence [be] suspended, converted to time served or home confinement until [his] projected release date." *Id.* at ¶ 15.  Swinton also broadly requested "all other relief the Court deems righteous and just."  *Id.*

Attempting to stress the urgency of alleged COVID-19 risks to his health, Swinton also filed two motions for preliminary injunction, requesting compassionate relief.  Doc. 11, 13.  In the first motion, he noted that in August of 2022, FCI Danbury was experiencing "a new outbreak of COVID-19" cases, Doc. 11-1, at ¶ 1, and he alleged that FCI Danbury medical staff failed to provide sufficient testing of the prison population, *id.* at ¶ 2.  In his memorandum in support of that motion, Swinton suggested  that the prison "attempt[ed] to cover [up] these [additional

---

(W.D.N.Y. Dec. 28, 2017).  He appealed; and the Second Circuit Court affirmed his convictions but vacated his sentence and remanded for resentencing to determine whether  "the career offender Guideline applie[d] to Swinton on his criminal record." *United States v. Swinton*, 797 F. App'x 589, 602 (2d Cir. 2019).  On remand, Swinton filed objections to the revised presentence investigation report (PSR), but said objections were overruled. *United States v. Swinton*, 517 F. Supp. 3d 157, 160 (W.D.N.Y. 2021).

[2] As "direct facts" underlying his petition, Swinton stated that he was "46 years old" and "suffer[ed] from hypertension and gout flare-ups."  Doc. 1, at 13.  But neither ailment comprised a terminal illness nor rendered him incapable of providing self-care within the environment of the correctional facility.

Also, the Court notes that Swinton alleged additional deficiencies with respect to his incarceration at other BOP facilities prior to his arrival at FCI Danbury in October 2021.  Doc. 1, at 13-17.  However, said conditions were not relevant to his conditions of confinement at FCI Danbury.

COVID-19] cases" to prevent them "from being discovered."   Doc. 12, at ¶ 1.

Furthermore, although he reportedly experienced symptoms of illness (*e.g.*, coughing up blood) in August of 2022, Swinton alleged that he was not called to medical because the "Warden told staff that they will not test any more inmates for COVID-19." *Id.* at ¶¶ 2- 3.   Consequently, he alleged, sick inmates were to be left untested until the matter "just blows over."   *Id.* at ¶ 3. Plaintiff offered no medical records or witness statements to support these allegations.   Instead, he provided an email he sent to Warden Pullen on August 21, 2022, complaining about the lack of medical attention for his two days of "coughing  up blood." *Id.* at 3.   According to Swinton, "Health Services" responded to his request for medical assistance by replying, "Thank you for your input."[3]    *Id.*

In his second "Notice of Motion" to request "preliminary injunctive relief" and/or a "temporary restraining order," Swinton sought redress with respect to "the unconstitutional [Bureau of Prison] policies employed against [him]." Doc. 13, at 1.   First, as to grievance procedures, Swinton requested the Court to issue orders to the Respondent to mandate that all inmates must be provided a "receipt" for any grievance "at the time of submission" to prevent staff members from having "a chance to destroy the grievance" before it is processed.   Doc. 13-1,   at 1 (¶ 1).   As an alternative, he sought an order that "staff sign and date any copy of [a] grievance presented by the inmate, stating that staff received this grievance" with the relevant "date and

---

[3] In medical records from the BOP Electronic Medical Records System, submitted by the Respondent, there is a notation that Swinton received the COVID-19 Janssen vaccine on April 10, 2021.   Doc. 10-2, at 2.   Thereafter, on November 23, 2021, he failed to appear for a scheduled appointment to receive his booster shot of Moderna COVID-19 vaccine; however, on December 20, 2021, Petitioner did receive that Moderna booster vaccine. *Id.*

time." *Id.*   Furthermore, he requested the Court to order that "all staff with the titles of 'counselor' or 'case manager' accept, file or issue a grievance form within two days of [an] inmate request." *Id.* at 1-2 (¶ 2).   As grounds for said request, he suggested that staff members have "tak[en] off weeks at a time" and refused to accept grievances as "late" because staff, such as his counselor, selectively hold onto grievances for "the 5 days" in which a grievance may be filed after an incident or issue has occurred. *Id.*

Asserting various other conditions of confinement as inadequate, Petitioner also requested injunctive relief as follows: (1) "an order to provide adequate dental care," with a deadline for his "4 broken crowns;" (2)   an order "to prevent further retaliation [against] the Petitioner for [his ] exercis[e] of his . . . First Amendment Right to Redress [his] [g]rievances" and to allow inmates more than one copy of grievance exhibits (to enable the filing of additional copies of these exhibits, as required on appeal, 28 C.F.R. § 542.14(c)(3); (3) "an order to increase the ffod [sic] portions at FCI Danbury since the food shortages have become common and uncorrected by staff," to "provide the complete federal menu to inmates that is [provided] all around the country for each meal," and to allow   "commissary" orders of food; and (4) an order to hire "outside contractors" as employees to "evaluate the asbestos and black mold concerns" of the FCI   Danbury facility.   Doc. 13-1, at 2-4 (¶¶ 3-6).

On behalf of Warden Pullen, the Government moved to dismiss Plaintiff's habeas petition and objected to his motions for preliminary injunctive relief.   Doc. 10 ("Response to Show Cause Order and Motion to Dismiss"), Doc. 15 ("Respondent's Opposition to Preliminary Injunction Motion").   Pullen's motion to dismiss asserted that the Court lacks authority to grant Petitioner's request for   home confinement so that the Court lacks subject matter jurisdiction pursuant to

4

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 10-1 (Pullen's "Memorandum of Law in Support of Response"), at 6-8.   According to the Respondent, only the BOP has the statutory authority under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), to transfer inmates to home confinement under certain conditions.   Doc. 10-1, at 5.   Moreover, the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, "affirmatively prohibits the Court from [releasing a prisoner to home confinement] in cases like this one." Doc. 10-1, at 9.

With respect to preliminary injunction, Warden Pullen objected, asserting that "[a] habeas petitioner who seeks emergency relief in the form of a temporary restraining order or preliminary injunction bears the burden of showing 'a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest.'" Doc. 15, at 1 (citing *Martinez-Brooks v. Easter,* 459 F. Supp. 3d 411, 438 (D. Conn. 2020)).   However, Swinton has failed to make such a showing.   *Id.*

## II.   DISCUSSION

### A.   Release to RRC Moots Requested Habeas Relief

On January 27, 2023, Plaintiff filed a notice of his "Address Change," indicating that he had been transferred to "VOA, RRC, Building B, 175 Ward Street, Rochester, New York 14605." Doc. 19.   Such a transfer establishes that Plaintiff now resides in a "Volunteers of America Residential Reentry Center," located in Rochester, New York.   According to the RRC's website, the center   "helps adults transition from incarceration and get a fresh start" by providing "housing, specialized case management, employment assistance, and life skills training." *See*

5

https://www.voa.org/affiliates/volunteers-of-america-upstate-new-york/.

Plaintiff's relocation to this center mooted his request for release from FCI Danbury. Under these circumstances, Plaintiff's petition for habeas relief [Doc. 1] is moot.[4]   Moreover, his requests for preliminary injunctive relief [Doc. 11, 13], based on the likelihood of success on his claim for habeas relief, are necessarily moot.   It thus follows that Respondent Pullen's motion to dismiss [Doc. 10],   pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), must be denied as moot.   That motion was based on legal grounds which were meritorious at the time of filing.[5]  However, the Court need no longer address the motion substantively in light of Plaintiff's

---

[4] Even if Plaintiff had been transferred from FCI Danbury to another prison, his requests for injunctive relief regarding FCI Danbury would still be moot. "It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility," including the officials employed therein. *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir. 1996). *See also Thompson v. Carter,* 284 F.3d 411, 415 (2d Cir. 2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility.").

[5] Had Petitioner not been relocated to an RRC, Respondent Pullen's motion asserted alternative, viable grounds for dismissal.  Only the Bureau of Prisons ("BOP") has the statutory authority under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), to transfer inmates to home confinement under certain conditions, Doc. 10-1, at 5. *See, e.g., United States v. Ogarro*, No. 18-CR-373-9 (RJS), 2020 WL 1876300, at * 6   (S.D.N.Y. Apr. 14, 2020) (The authority to "permit prisoners to finish the remainder of their sentence in home confinement" remains "exclusively within the discretion of the BOP; the Court lacks authority" to order such a release.).

In addition, the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, "affirmatively prohibits the Court from [releasing a prisoner to home confinement] in cases like this one," Doc. 10-1, at 9 – where Petitioner seeks prospective relief which is neither "narrowly drawn" to correct the federal violation nor the "least intrusive means necessary," 18 U.S.C. § 3626(a)(1). *See also Dimartino v. Sage*, No. 3:21-CV-00498 (KAD), 2022 WL 124308, at *5 (D. Conn. Jan. 13, 2022) (dismissing habeas petition seeking prison release – "the most sweeping" form of relief – in light of the PLRA's restrictions, barring home confinement placement without intervening, less intrusive measures).

Furthermore, under the First Step Act, 18 U.S.C. § 3582 (c)(1)(A), although a district court

release from FCI Danbury into the Rochester RRC.

The Court further notes that even if Petitioner's habeas claim not been mooted, there would be no factual basis to sustain his petition.  Current BOP statistics show that FCI Danbury is functioning with only two active cases of COVID-19 in the prison population of 969 inmates and no active COVID-19 cases of staff.  *See* https://www.bop.gov/coronavirus/ (Map of Federal Prisons). The prison continues to employ COVID-19 prevention procedures.  However,  due to negligible rates of infection, FCI Danbury has restored "normal operations" regarding protocols in many areas of prison life ( barber shop, commissary, laundry, law library, programs and services, recreation, transport, visitation, work detail).  *See* "Inmate Programming and Services Modifications," https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.[6]

---

may modify a term of imprisonment by granting compassionate release upon a finding of "extraordinary and compelling reasons," the prisoner's application must be made to the *sentencing judge.  United States v. Avery*, 807 F. App'x 74, 77 (2d Cir. 2020).  *See also, e.g., Castelle v. Pullen*, No. 3:22 CV 297 (KAD), 2022 WL 4448898, at *4 (D. Conn. Sept. 23, 2022) ("A request for a sentence reduction or for compassionate release under 18 U.S.C. § 3582 must be made to the sentencing court that imposed that sentence."). Here, not only are the circumstances not compelling, but this Court was not the sentencing court. Authority under the First Step Act would have rested solely with District Judge Wolford of the Western District of New York.

Finally, even if the Court had construed Swinton's habeas petition as a request for bail, *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001), no current extraordinary circumstances would have warranted alteration of his conditions while he was confined at FCI Danbury.   *See* n. 6, *infra.*

[6]   On March 21, 2023,  the BOP website indicated that FCI Danbury is currently operating under the lowest COVID-19 threat level:   Operational Level 1, "normal operations" due to the facility's low inmate isolation rate for COVID-19 and low COVID-19 community risk of the county where the facility is located.  *See* https://www.bop.gov/locations/institutions/dan/ (indicating a "[m]edical isolation rate of <2% and [n]ew community positive cases <100 per 100,000 over the last 7 days"). General modifications in effect include both "infection prevention procedures" (*e.g.*, "high sanitation" standards of daily cleaning;  testing for SARS-CoV-2 of symptomatic inmates and those who have been exposed to the disease during movement; requirements that all workers (staff/contractors/inmate orderlies) wear surgical  masks  in  all

**B.   Second Motion for Injunctive Relief [Doc. 13] and Supplemental Request [Doc. 16]**

Even if Swinton's second motion for injunctive relief [Doc. 15] had not been mooted by his move to the Rochester RRC, that motion was substantively defective because it addressed matters outside the scope of the dispute framed in his petition.   The Court may not issue extraneous injunctive relief. *See, e.g., De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *Lebron v. Armstrong*, 289 F. Supp. 2d 56, 61 (D. Conn. 2003) (denying inmate's request for injunctive relief because, *inter alia*, it was based on allegations that were different and unrelated to the facts pled in the underlying complaint); *Dixon v. Lupis*, No. 3:20-CV-1754 (VLB), 2021 WL 4391246, at *11 (D. Conn. Sept. 24, 2021) ("The Court concludes that it would not be appropriate to grant injunctive relief that is unrelated to the allegations asserted in support of his Eighth Amendment claim . . . ."); *Torres v. UConn Health*, No. 3:17-cv-00325 (SRU), 2017 WL 3713521, at *2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying claims in complaint).

Even before becoming moot, Swinton's requests for injunctive relief in his second motion [Doc. 13] were all extraneous – relating to alleged deficiencies in BOP grievance procedures,

---

patient   care areas) and operational   modifications   (*e.g.*, social distancing in all health care units and patient care areas, face coverings recommended at various key indoor locations, and self-monitoring by staff for COVID-19 symptoms). For details of modifications, *see* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.

inadequate dental care, First Amendment retaliation, and food shortages.[7]    They thus pertained to matters outside Swinton's petition for release to home confinement due to FCI Danbury's COVID-19 protocols.[8] Prior to being rendered moot, these requests already failed on their contents.

Finally, Petitioner's recent "Supplement" [Doc. 16] provided no viable independent grounds for relief.  In that supplement,  Swinton presented documents to demonstrate that a grievance he filed regarding alleged "retaliation by disciplinary report" was rejected on October 3, 2022, by the BOP's "Central Office" in Washington, D.C.[9]   Doc. 16, at 4. He argued that this issue should be deemed "exhausted" due to his multiple attempts to resolve it.   *Id.* at 5.   He also suggested throughout his filing that the BOP grievance process is flawed.

---

[7] Plaintiff included allegations regarding inadequate treatment of dental cavities in his petition.   Doc. 1, at 14-15. However, those allegations pertained to his prior incarceration at FCI Loretto and did not, in any event, relate to his request for home confinement due to COVID-19 protocols at FCI Danbury.

[8] Most recently Swinton filed an affidavit to attest that he witnessed an altercation at FCI Danbury between Raekwon Fuqua, an inmate, and Officer Conklin.   Doc. 18, at 1. In that filing, he suggested that the incident appeared to be an unprovoked attack and may have been motivated by a "mess up and move up policy" of the Federal Bureau of Prisons, under which officers who incite violence against prisoners are promoted. *Id.* Although such testimony may be helpful to inmate Fuqua in an investigation or legal action regarding that alleged attack, it is not relevant to Swinton's present petition.

[9] The "Incident Report" at issue was made by Counselor Bozek and alleged that as the result of a "random cell search" on May 17, 2022, a "small photo book," containing "nude photos" of women, was found under Swinton's mattress in his cell.   Doc. 16, at 21.   This book violated the prison policy prohibiting inmates from possessing "sexually explicit materials."   *Id.*   It was thus confiscated and brought to the Lieutenants' office for processing. *Id.*   Swinton does not refute that such a book was found.   However, he believes that he was singled out for this cell search because Swinton had reported Bozek for failing to file his grievances and "Counselor Bozek has never searched any sleeping areas of any other inmates except [him]." *Id.* at 22.

However, the Court concurs with Respondent that exhaustion of remedies was not the grounds for her motion to dismiss Swinton's petition.  Doc. 17, at 1.  Accordingly, Swinton's "alleged inability to pursue administrative remedies," which Respondent disputes, "is not relevant to the Respondent's motion, much less a basis for injunctive relief" in this action.  *Id.*

Furthermore, Swinton's alleged difficulties with the BOP's administrative grievance process fail to state any viable independent claim.   Petitioner cannot assert a cognizable constitutional violation based on denial of access to the courts resulting from an inability to exhaust BOP administrative remedies.   As Judge Dooley of this District recently explained in a factually similar case:

> A BOP staff violation of a BOP regulation does not give rise to a constitutional violation. *See Milchin v. Warden*, No. 3:21-CV-1361 (KAD), 2022 WL 1104963, at *6 (D. Conn. Apr. 13, 2022) (noting that "BOP regulations are not themselves constitutional rights" (quotation omitted)). Likewise, a federal prisoner does not have a constitutional right to the BOP prison grievance procedure. *See McKay v. U.S. Dep't of Just.*, 406 F. App'x 570, 570 n.1 (3d Cir. 2010) ("[T]here is no constitutional right to a prison grievance system."); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.").
> . . .
> Because Petitioner has no constitutional right to the BOP administrative procedures, he is not entitled to habeas relief based on the asserted BOP staff's misconduct that allegedly frustrated his exhaustion of his BOP remedies.

*Castelle v. Pullen*, No. 3:22-CV-297 (KAD), 2022 WL 4448898, at *6 (D. Conn. Sept. 23, 2022).

Plaintiff's supplementary filings fail to offer support for any viable relief.   His motions for injunctive relief [Doc. 11, 13] and his supplemental filings [Doc. 15, 16] are moot, as well as fatally defective on their terms.

## III. CONCLUSION

The Court recognizes that COVID-19 has posed historic challenges to the health and well-being of our nation's population.   Moreover, even in the absence of pandemic, human interaction, a necessity of life, inherently creates some measure of risk of contracting disease.   In any circumstance, however, the Court is bound to act within its authority, as defined by the law – constitutional, statutory, regulatory, and binding precedential.   This includes when addressing prisoner requests for relief.

In the case at bar, Swinton's petition for habeas corpus [Doc. 1] is DISMISSED.   He  has been released from FCI Danbury to a "Residential Reentry Center," which has rendered his petition for compassionate release from prison MOOT.   Moreover, even had he remained at FCI Danbury, for the reasons set forth in this Ruling, his petition would have been denied on legal and factual grounds.   Swinton's motions for temporary and preliminary injunctive relief [Doc. 11, 13] are MOOT and alternatively DENIED as fatally defective.

Because the petition giving rise to Respondent's motion to dismiss [Doc. 10] has been dismissed as moot, that motion is DENIED as MOOT.   Pullen's motion, filed pursuant to Federal Rules 12(b)(1) and 12(b)(6) of Civil Procedure, contained once-meritorious legal arguments, but has been rendered moot by Swinton's relocation to the Rochester RRC.

The case is hereby DISMISSED in its entirety.   The Court finds that reasonable jurists would not find it debatable that Plaintiff's request for habeas relief is MOOT.[10]   Therefore, the

---

[10]   It is alternatively not debatable that this Court lacks jurisdiction to grant the home confinement relief Petitioner previously sought and that his petition failed to state a claim upon which relief may be granted.

Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken *in forma pauperis* from this Order would not be taken in good faith. Accordingly, a certificate of appealability will not issue; and *in forma pauperis* status, if requested, will be denied for the purpose of an appeal.[11] *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). *See also Linden v. Harper & Row Publishers*, 490 F. Supp. 297, 300 (S.D.N.Y. 1980) (employing objective standard to certify that plaintiff's motion to appeal IFP the court's dismissal of her civil copyright infringement case, "viewed objectively, to be plainly frivolous as a matter of law").

The Clerk of the Court is respectfully requested to send a copy of this Order to Petitioner, note service in the docket, enter judgment dismissing the Petition [Doc.1], and close the case.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         March 23, 2023


                              */s/Charles S. Haight, Jr.*
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge

---

[11] Plaintiff filed two motions to proceed *in forma pauperis* ("IFP") in this action.   Doc. 2, 4.   Magistrate Judge Farrish denied the first motion as moot because Swinton paid the $5.00 filing fee for *habeas* matters after he filed his IFP motion. Doc. 6.   However, due to Swinton's stated desire in the second IFP motion to "proceed as a poor person from this point forward," Doc. 4, at 1, Magistrate Judge Farrish denied the second motion *without prejudice* to "refiling at a later date, when Mr. Swinton knows what fees he proposes to incur" and presents the reasons he "needs to incur them" with updated proof of his financial circumstances. *Id.* It thus appears that Swinton would likely seek IFP status should he attempt to appeal.